UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| In re Application of<br><br>EURASIAN NATURAL RESOURCES CORP., LTD.,<br><br>Applicant. | Case No. 18-mc-80041-LB<br><br>**ORDER GRANTING APPLICATION TO SERVE REQUEST FOR DISCOVERY FOR USE IN A FOREIGN PROCEEDING**<br><br>Re: ECF No. 1 |

## INTRODUCTION

Eurasian Natural Resources Corporation, Ltd. ("ENRC") filed an ex parte application under 28 U.S.C. § 1782 to subpoena Danny Forston, a reporter for *The Sunday Times* (U.K.), in connection with a contemplated lawsuit in the United Kingdom relating to the leaking to Mr. Forston of a confidential letter from ENRC's former legal counsel. Subject to certain conditions described below, the court grants ENRC's request to serve its proposed subpoena on Mr. Forston.

## STATEMENT

ENRC, a U.K. corporation, hired the law firm Dechert LLP ("Dechert") to conduct an investigation of alleged wrongdoing by an ENRC subsidiary.[1] This investigation was purportedly

---

[1] Boyd Decl. – ECF No. 1-1 at 2 (¶¶ 2–3). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 18-mc-80041-LB

extremely sensitive, and ENRC's communications with Dechert were protected by attorney-client privilege.[2]

On or around March 27, 2013, ENRC fired Dechert.[3] This termination was "acrimonious."[4] On April 12, 2013, Dechert wrote ENRC a letter that contained allegations of misconduct by ENRC.[5] These allegations were based on confidential information that ENRC had provided to Dechert while Dechert was representing it and privileged legal advice that Dechert had provided to ENRC.[6]

At some point thereafter, Dechert's letter was leaked to Danny Forston, a reporter for the U.K. newspaper *The Sunday Times* who lives and works in the Northern District of California.[7] On April 28, 2013, *The Sunday Times* published two articles written by Mr. Forston that described the letter and publicly reported confidential information about ENRC that had been included in the letter.[8]

ENRC believes that Dechert leaked the letter, based on the fact that the letter was highly confidential and only a limited number of people had access to it and that Dechert had an apparent motive to leak the letter after it was terminated by ENRC.[9]

ENRC seeks to take discovery of Mr. Forston. Specifically, it seeks to subpoena him to (1) produce "[a]ll documents reflecting or constituting communications with and all documents received from Dechert LLP or any of its members, employees, agents, or anyone else acting on their instructions or on their behalf, which refer or relate in any way to ENRC or any of its subsidiaries or affiliates" and "[a]ll documents describing, reflecting, or constituting

---

[2] *Id.* (¶ 4).
[3] *Id.* (¶ 5).
[4] ENRC App. for Discovery – ECF No. 1 at 3.
[5] Boyd Decl. – ECF No. 1-1 at 2 (¶ 5).
[6] *Id.*
[7] *Id.*; ENRC App. for Discovery – ECF No. 1 at 2–3.
[8] *Id.* at 2–3 (¶ 5); Boyd Decl. Ex. A (news articles) – ECF No. 1-1 at 4–17.
[9] *Id.* at 2–3 (¶¶ 3, 6).

communications between Dechert LLP and ENRC, and all documents constituting transmittals or containing any discussion of such communications," and (2) take his deposition.[10]

**ANALYSIS**

**1. Governing Law**

ENRC makes its application for discovery under 28 U.S.C. § 1782(a), which provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

A litigant in a foreign action qualifies as an "interested person" under Section 1782. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). In order to apply for discovery pursuant to Section 1782, a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent. *Id.* at 258–59. Instead, all that is necessary is that a "dispositive ruling" by the foreign adjudicative body is "within reasonable contemplation." *Id.* at 259 (holding that discovery was proper under Section 1782 even though the applicant's complaint against the opposing party was only in the investigative stage). An ex parte application is an acceptable method for seeking discovery pursuant to Section 1782. *In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) (holding that the subpoenaed parties may raise objections and exercise their due process rights by bringing motions to quash the subpoenas).

A district court has wide discretion to grant discovery under Section 1782. *Intel*, 542 U.S. at 260–61. In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding,"

---

[10] Boyd Decl. Ex. B – ECF No. 1-1 at 18–22.

ORDER – No. 18-mc-80041-LB  3

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance," (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264–65.

A district court's discretion is to be exercised in view of the twin aims of Section 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004). There is no requirement that the party seeking discovery establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding. *See Intel*, 542 U.S. at 247, 261–63.

When considering an application for discovery pursuant to Section 1782, the court considers first whether it has the statutory authority to grant the request and then whether it should exercise its discretion to do so. *Lazaridis v. Int'l Centre for Missing and Exploited Children, Inc.*, 760 F. Supp. 2d 109, 112 (D.D.C 2011) (citations omitted).

## 2. Application

### 2.1 Statutory Requirements

ENRC's application satisfies the three minimum statutory requirements of Section 1782. First, ENRC's application seeks discovery from Mr. Forston, who resides and works in the Northern District of California. Second, the requested discovery is for use in a reasonably contemplated lawsuit in the United Kingdom against the persons or entities that leaked the Letter (which ENRC believes is likely Dechert). Third, ENRC qualifies as an "interested person" because it will be a party to the anticipated litigation.

### 2.2 Discretionary *Intel* Factors

The discretionary *Intel* factors also support granting the application, at least as to ENRC serving its proposed subpoena on Mr. Forston.

### 2.2.1 Participant in a foreign proceeding

The first *Intel* factor asks whether the "person from whom discovery sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. If the person is a participant, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, unavailable in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

Mr. Forston would not be a participant in ENRC's contemplated U.K. proceeding. This factor weighs in favor of granting the application.

### 2.2.2 Nature of the foreign tribunal and receptivity to U.S. federal-court judicial assistance

The second *Intel* factor requires the court to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.

There is no information that a U.K. court would reject information obtained through Section 1782 discovery. In this situation, courts "err on the side of permitting discovery." *See In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016) (citing cases).

### 2.2.3 Attempt to circumvent foreign proof-gathering restrictions or policies

The third *Intel* factor considers whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264–65. There is no evidence of this on this record.

### 2.2.4 Undue intrusion or burden

The fourth *Intel* factor is whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.

ENRC's request may be unduly intrusive or burdensome if Mr. Forston were to invoke the journalist's privilege. Under Section 1782, "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a).

The journalist's privilege may well apply to the discovery that ENRC seeks. "[W]hen facts acquired by a journalist in the course of gathering the news become the target of discovery, a qualified privilege against compelled disclosure comes into play." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993); *accord, e.g.*, *Hamilton v. Hart*, No. 1:10-cv-00272-DAD-EPG (PC), 2017 WL 85781, at *2 n.1 (E.D. Cal. Jan. 9, 2017) ("[J]ournalists are protected by a qualified privilege against compelled disclosure in discovery.") (citing *Schoen*, 5 F.3d at 1292–93). "Rooted in the First Amendment, the privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest 'of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice.'" *Shoen*, 5 F.3d at 1292 (quoting *Herbert v. Lando*, 441 U.S. 154, 189 (Brennan, J., dissenting)). "[T]he journalist's privilege applies to a journalist's resource materials even in the absence of the element of confidentiality, [although] the absence of confidentiality may be considered in the balance of competing interests as a factor that diminishes the journalist's, and public's, interest in non-disclosure." *Id.* at 1295. "[T]he privilege is qualified, not absolute, and . . . the process of deciding whether the privilege is overcome requires that 'the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts, and a balance struck to determine where lies the paramount interest.'" *Id.* at 1292–93 (citing *Farr v. Pitchess*, 522 F.2d 464, 468 (9th Cir. 1975)).

Because Mr. Forston has not actually invoked the privilege yet and might end up not doing so, the court holds that this *Intel* factor, at this juncture, does not weigh against allowing ENRC to serve its proposed subpoena on Mr. Forston. This service is, of course, without prejudice to Mr. Forston's right to move to quash the subpoena on the grounds of journalist's privilege (or for any other valid reason). *See generally In re Letters Rogatory*, 539 F.2d at 1219 (foreign discovery request can be approved ex parte because subpoenaed parties can later raise objections and move

to quash). *But see In re Green Dev. Corp. S.A. de C.V.*, No. WDQ-15-2985, 2015 WL 10319091, at *5 (D. Md. Oct. 1, 2015) (report and recommendation) (recommending that application to serve discovery request on journalist be denied, without requiring journalist to be served with request or assert privilege himself), *adopted*, No. CCB-15-2985, 2016 WL 640791 (D. Md. Feb. 18, 2016).

To further alleviate potential burden, the court in its discretion orders that the return date for ENRC's subpoena must be at least 30 days after the date ENRC serves the subpoena on Mr. Forston.

## CONCLUSION

For the foregoing reasons, the court grants ENRC's application to serve its proposed subpoena on Mr. Forston. The return date for the subpoena must be at least 30 days after the date ENRC serves it on Mr. Forston, and Mr. Forston may have that full time to respond or object to it.

If Mr. Forston wants to quash the subpoena, he must notify ENRC that he wishes to do so before the return date of the subpoena. Then, in lieu of a formal motion to quash, the parties must engage in the meet-and-confer and joint-letter-brief process described in the undersigned's standing order, which is attached to this order.

ENRC must serve Mr. Forston with a copy of this order and a copy of the standing order when it serves its subpoena.

**IT IS SO ORDERED.**

Dated: March 30, 2018

LAUREL BEELER
United States Magistrate Judge